

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-23-2000

# Holmes v. Pension Plan/ Bethlehem Steel

Precedential or Non-Precedential:

Docket 99-1619

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Holmes v. Pension Plan/ Bethlehem Steel" (2000). *2000 Decisions.* Paper 107.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/107

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 23, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1619 and 99-1620

ARNOLD HOLMES; LAWRENCE HOLLYFIELD, Fiduciary
to the Estate of Collins Hollyfield

v.

PENSION PLAN OF BETHLEHEM STEEL CORPORATION
AND SUBSIDIARY COMPANIES; EMPLOYEE BENEFITS
ADMINISTRATION COMMITTEE OF BETHLEHEM STEEL
CORPORATION; MICHAEL P. DOPERA;
JOHN/JANE DOES 1-10

Arnold Holmes and Lawrence Hollyfield, Fiduciary
to the Estates of original named plaintiff Collins
Hollyfield, individually and on behalf of all
members of the proposed class and subclasses,

        Appellants at No. 99-1619

ARNOLD HOLMES; LAWRENCE HOLLYFIELD, Fiduciary of
the Estate of Collins Hollyfield

v.

PENSION PLAN OF BETHLEHEM STEEL CORPORATION
AND SUBSIDIARY COMPANIES; EMPLOYEE BENEFITS
ADMINISTRATION COMMITTEE OF BETHLEHEM STEEL
CORPORATION; MICHAEL P. DOPERA;
JOHN/JANE DOES 1-10

the Pension Plan of Bethlehem Steel Corporation and
Subsidiary Companies, the Employee Benefits
Administration Committee of Bethlehem Steel Corporation
and Michael P. Dopera,

        Appellants at 99-1620

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 98-cv-01241)
District Judge: Honorable Franklin S. Van Antwerpen

ARGUED April 11, 2000

BEFORE: NYGAARD, ALITO, and GIBSON,*
Circuit Judges.

(Filed May 23, 2000)

        Alan M. Sandals, Esq. (argued)
        Howard I. Langer, Esq.
        Sandals, Langer & Taylor
        1650 Market Street
        One Liberty Place, 50th Floor
        Philadelphia, PA 19103

         Attorneys for Appellants

        G. Stewart Webb, Jr., Esq. (argued)
        Venable, Baetjer & Howard
        2 Hopkins Plaza
        1800 Mercantile Bank & Trust
         Building
        Baltimore, MD 21201

         Attorney for Appellees

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Appellants, Arnold Holmes and Lawrence Hollyfield, filed
a civil action against Appellees pursuant to SS 404 and
502(a) of the Employment Retirement Income Security Act.
_____

* The Honorable John R. Gibson, United States Circuit Judge for the
Eighth Circuit Court of Appeals, sitting by designation.

29 U.S.C. SS 1104 & 1132(a). The District Court had jurisdiction over the action pursuant to 29 U.S.C. S 1132(e)(1). We have jurisdiction to review the District Court's final order pursuant to 28 U.S.C. S 1291.

Appellants, plaintiffs below, successfully prosecuted their claim to interest on pension benefits they received after a decade and a half of delay. Nevertheless, Appellants challenge two equitable limitations the District Court placed on the interest it awarded. They also challenge the District Court's refusal to certify two classes of plaintiffs they proposed for class action purposes. Finally, they challenge the District Court's ruling that a legal memorandum they sought to discover was protected by the doctrine of work-product immunity. We will affirm in part, and reverse in part.

Appellees, defendants below, cross appeal, ostensibly raising an issue as to whether the District Court erred by concluding that Appellants were entitled to any interest at all, regardless of the limitations it imposed. Rather than directly challenging the District Court's decision, however, they limit their argument to a critique of our decision, which the District Court correctly found controlling, in Fotta v. Trustees of the United Mine Workers of Am. Health & Retirement Fund, 165 F.3d 209 (3d Cir. 1998) (holding that ERISA permits actions to recover interest on wrongly withheld benefits even where the benefits were paid before litigation). We hold that the argument is not properly presented in this appeal, and decline to entertain it.

I. Background Facts & Procedure

Appellants, as well as the members of the plaintiff classes they seek to certify, are participants in, or beneficiaries of, the Pension Plan of Bethlehem Steel Corporation and its Subsidiary Companies (hereafter referred to as "the Plan"). Prior to a 1977 amendment, the Plan required that benefits due under the Plan be offset (i.e., reduced) by the amount of any pension benefits the relevant participant received from any source other than the Plan itself. In July 1977, the Plan was amended so that the offset requirement applied only to non-plan pension benefits "attributable to

3

employment with an Employing Company." See Bethlehem 1977 Salaried Pension Plan S 3.8 (J.A. at 128-29). In other words, after the 1977 amendment, non-Plan pension benefits received from sources falling outside the definition of an Employing Company are not deducted from benefits received from the Plan itself.

The Plan defines an "Employing Company" to mean Bethlehem Steel, any Bethlehem Subsidiary that has adopted the Plan, and "any corporation which, prior to July 31, 1966, was merged into or consolidated with any such subsidiary company or with" Bethlehem Steel. See Bethlehem Steel 1977 Salaried Pension Plan at 2 (J.A. at 120). Additionally, the Plan provides that benefits received from sources falling within the definition of an Employing Company are offset only to the extent they were earned during a period in which the participant was being "credited with continuous service for the purpose of calculating the amount of any regular pension under[the] Plan." Id. at 19-20 (J.A. at 128-29).

Appellants Holmes and Hollyfield both worked for Bethlehem Steel subsidiaries prior to their respective retirements, and both participated in the Plan. After retiring in 1977, Hollyfield applied for pension benefits from both the Plan, and from the United Mine Workers of America Retirement Fund. Unlike the Plan, the UMWA Fund is not employer specific. Rather, it is a multi-employer plan providing benefits to all workers represented by the UMWA. Like the Plan, however, it is funded entirely by employer contributions, including contributions from Bethlehem Steel and its subsidiaries.

Following his retirement, the Plan awarded Hollyfield $214.13 in monthly pension benefits, effective December 1, 1977. Nearly a year later, in November 1978, his application for UMWA benefits was granted in the amount of $250 per month, retroactive to September 1, 1977. Thereafter, the Plan notified Hollyfield that his Plan benefits would be reduced by the full amount of his UMWA benefits. Thus, because his UMWA benefits were greater than this Plan benefits, Hollyfield's Plan benefits were eliminated altogether. Additionally, because his UMWA benefits award was retroactive, the Plan also required Hollyfield to repay

4

all Plan benefits he had previously received. Hollyfield complied, paying the Plan $2,449.56 in previously received benefits. The Plan did not request, and Hollyfield did not pay, interest on the repaid benefits.

Appellant Holmes retired in 1980 and, like Hollyfield, applied for pension benefits from both the Plan and from the UMWA Fund. The Plan awarded him a monthly benefit of $1,224.36, effective February 1, 1981. In October 1981, the UMWA Fund awarded Holmes a monthly benefit of $290.00, retroactive to November 1980. As it did with Hollyfield, the Plan determined that all of Holmes' UMWA benefits should be offset against his Plan benefits. And, again, it required Holmes to repay all offset amounts already received. Thereafter, Holmes repaid the Plan $2,825.00, reflecting principal only and no interest.

In 1994, Hollyfield's son contacted Plan administrators regarding his father's Plan benefits. In a subsequent investigation, the Plan determined that none of Hollyfield's UMWA benefits were earned during a period in which he was being credited with continuous service for purposes of calculating his Plan benefits. In other words, the Plan concluded that none of Hollyfield's UMWA pension should have been offset against his Plan benefits during the 17-year period since he had retired. Consequently, the Plan paid Hollyfield a lump sum of $47,553 in past-due benefits. That sum represented past-due principal only, and did not include any interest payments for the period of delay.

A similar series of events in 1997 led to Holmes' collection of $24,514 in past-due Plan benefits. In contrast to Hollyfield's case, however, the Plan determined that Holmes earned 65% of his UMWA benefits at the same time he was being credited with continuous service for purposes of calculating his benefits under the Plan. Therefore, his lump-sum payment amounted to only 35% of the Plan benefits that had been offset in the sixteen years since his retirement, not the 100% that Hollyfield had recovered.

Shortly after Holmes received his past-due benefits, his attorney placed a call to the Plan's offices. In a conversation with an assistant to the Plan's administrator, the attorney claimed that Holmes was entitled to interest on his past-

due benefits as well as the principal. In response, a Plan attorney prepared a memorandum analyzing the legal issues surrounding Holmes' interest claim. The memorandum was circulated to other Plan attorneys, as well as to its administrator. Thereafter, the administrator informed Holmes' attorney that nothing in the Plan provided for interest payments on delayed benefits, and that the administrator had determined such a payment would not be appropriate. See Letter from Dopera to Thornton of 07/22/1997 (J.A. at 185). Holmes then appealed the denial of his interest claim to the Plan's Employee Benefits Administration Committee. The Committee affirmed. See Letter from Dopera to Thornton of 10/10/1997 (J.A. at 191).

In March 1998, Holmes and Hollyfield filed a civil complaint against the Plan and its administrators. In Count One of the complaint, both Holmes and Hollyfield sought interest on their delayed benefits, as well as disgorgement of any additional profits the Plan may have earned on those benefits during the period of delay. Holmes also challenged the continuing 65% offset of his UMWA benefits against his Plan benefits, arguing that the UMWA benefits were not received from an "Employing Company." See App. at 20. Count Two alleged violations of the fiduciary duty to disclose accurate information. See id. at 21.

The complaint also sought certification of two proposed classes of Plan participants and beneficiaries: (1) those whose benefits had been, were or would one day be erroneously offset; and (2) those who had received or one day would receive past-due benefits but neither interest nor disgorgement of unjust gains. On August 12, 1998, the District Court denied the motion for class certification without prejudice, granting Appellants leave to refile their motion after additional discovery.

During the course of discovery, Appellants sought to compel production of the legal memorandum prepared in response to Plaintiff Holmes' initial claim to interest on his delayed benefits. The defendants argued that the memorandum was protected by both the attorney-client privilege and the doctrine of work-product immunity. A Magistrate Judge rejected the attorney-client privilege

claim, but concluded that the memorandum was protected from discovery under the work-product immunity doctrine. The District Court affirmed, concluding that the Magistrate Judge's reasoning was neither clearly erroneous nor contrary to law.

After answering Appellants' complaint, the defendants moved for summary judgment on both of its counts. With respect to Count One, the defendants argued that neither ERISA nor the Plan required payment of interest"when retroactively awarding benefits to a participant." See Def.'s Motion for S.J. at 4 (J.A. at 49). The District Court agreed, and granted summary judgment in favor of the defendants on Count One's interest claims.

The court also ruled that Plaintiff Holmes had failed to exhaust his administrative remedies with respect to his continuing-offset claim. Consequently, the court dismissed the claim without prejudice. Holmes subsequently reasserted the claim in a separate law suit. See Holmes v. Pension Plan of Bethlehem Steel and Subsidiary Cos. , No. 99-CV-2369 (E.D. Pa., filed May 7, 1999) (J.A. at 591). The District Court also granted summary judgment for the Defendants on Count Two's breach-of-fiduciary-duty claims, ruling that they were barred by the statute of limitations. Thereafter, the court entered final judgment and closed the case.

On February 4, 1999, the District Court granted Appellants' motion for reconsideration of their interest claims based on our intervening decision in Fotta v. Trustees of the United Mine Workers of Am. Health & Retirement Fund, 165 F.3d 209 (3d Cir. 1998) (holding that ERISA permits actions to recover interest on wrongly withheld benefits even where the benefits were paid before litigation). At the same time, the court also ruled that the doctrine of laches would limit the period for which interest could be recovered, and that Pennsylvania's general six-year statute of limitations provided the appropriate limitations period. See Mem. & Order of 02/04/1999 at 5-7 (J.A. at 528-30).

In a subsequent Memorandum and Order, the District Court ruled that Appellants were entitled to interest on

7

their delayed benefits. But, based on a balancing of the equities, the court also ruled that such interest should be calculated at the post-judgment interest rate specified in 28 U.S.C. S 1961. See Mem. & Order of 03/25/1999 at 3-9 (J.A. at 528-30). Thus, the court ordered the Plan to pay Appellants Holmes and Hollyfield $1391.50 and $459.68 respectively as interest on their delayed benefits. On March 25, 1999, the court closed the case for a second time.

A few days earlier, Appellants had renewed their motion for class certification, once more proposing two classes of prospective plaintiffs. Consequently, on April 7, Appellants moved the District Court to reconsider its order closing the case, and to consider their renewed motion for class certification. The District Court granted the motion to reconsider, but ultimately denied certification of both proposed classes. That denial was based on the court's conclusion that the proposed class definitions were overly broad, and that neither class satisfied the prerequisites for certification. See Mem. & Order of 06/30/99 at 7-29 (J.A. at 607-29). The court then closed the case for a third time, and Appellants filed this appeal.

On appeal, Appellants argue that the District Court erred by: (1) awarding interest at the statutory rate rather than requiring the Plan to disgorge the actual profits it earned on their delayed benefits; (2) concluding that the doctrine of laches applied to limit the period for which they could recover interest; (3) denying certification of their proposed plaintiff classes; and (4) concluding that the legal memorandum they sought to discover was entitled to work-product immunity.

II. Discussion

A. Appellant's Interest Rate Claims

Though ultimately awarded interest on their delayed pension benefits, Appellants argue that the District Court erred by calculating the award based on the post-judgment interest rate established at 28 U.S.C. S 1961. Relying on our decision in Fotta, Appellants argue that they are entitled to recover interest at the actual rate of return that

the Pension Plan earned during the period it wrongfully delayed payment of their benefits. Our review of the District Court's interpretation and application of Fotta is plenary. See Holmes v. Millcreek Township Sch. Dist., 205 F.3d 583, 589 (3d Cir. 2000) (citing Louis W. Epstein Family Partnership v. Kmart Corp., 13 F.3d 762, 765-66 (3d Cir. 1994)). We conclude, however, that it is Appellants, not the District Court, who have misinterpreted Fotta .

In Fotta, we held that a beneficiary may bring an action under ERISA against a pension plan "to recover interest on benefits the plan paid after some delay, but without the beneficiary having sued under ERISA" to recover the benefits themselves. See id. at 210. In earlier decisions, we had already recognized that prejudgment interest was available where the beneficiary had brought suit under ERISA to recover unpaid benefits. See Fotta , 165 F.3d at 212 (citing Schake v. Colt Indus. Operating Corp. Severance Plan for Salaried Employees, 960 F.2d 1187, 1192 n.4 (3d Cir. 1992); Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1010 (3d Cir. 1992)).

Those earlier decisions were based on recognition of the fact that

> "[t]o allow the Fund to retain the interest it earned on funds wrongfully withheld would be to approve of unjust enrichment. Further the relief granted would fall short of making [the claimant] whole because he has been denied the use of the money which was his."

Id. (quoting Short v. Central States, Southeast and Southwest Areas Pension Fund, 729 F.2d 567, 576 (8th Cir. 1984)). Those principles applied, we held in Fotta, whether the beneficiary ultimately recovered the wrongfully withheld benefits through judicial action, or through non-judicial means. See id.

Although Fotta makes clear that interest on delayed ERISA benefits is an equitable remedy left to the discretion of the trial court, id. at 213-15, we also held that "interest is presumptively appropriate." Id. at 214. We did not, however, offer extensive guidance for deciding what rate of interest is appropriate in a given case. Recognizing the need to fill this gap, as well as its discretion in doing so, the

9

District Court in this case turned to Fotta's two primary justifications for interest awards: (1) ensuring full compensation to the plaintiff; and (2) preventing unjust enrichment. See Mem. of 03/25/1999 at 5, (J.A. at 571) (citing Fotta, 165 F.3d at 213). In considering these two justifications, the District Court concluded that Fotta did not qualify one as more important than the other, and that each could result in a different interest rate. See id.

Focusing solely on compensating the plaintiff, the court concluded that it would be inappropriate to award interest at a rate higher than the essentially zero-risk yield on Treasury Bills provided for in 28 U.S.C. S 1961. See id. at 6. In the court's view, it would be "highly speculative" to simply assume that Appellants would have invested their benefits in higher-risk, higher-yield securities, and that to so assume would be to reward them for risks they did not take. See id. On the other hand, if the only objective were to prevent unjust enrichment, disgorgement of the defendant's actual profits would be the appropriate measure of interest to be awarded. See id. Ultimately, the District Court concluded that the best way to resolve this apparent conflict was to resort to equitable principles. See id. at 7.

Balancing the equities, the District Court concluded that requiring the Plan to disgorge its profits "would be essentially punitive in nature," and that punitive measures were inappropriate where the delayed payment of benefits was inadvertent rather than intentional. See id. The court further concluded that "the fact that the Appellants have been paid amounts on all of the years, rather [than] the amount they are legally entitled to is further evidence of good faith." Id. at 7-8.2 Therefore, the court ruled, restitution was the most equitable measure of interest due, and restitution would be achieved by awarding interest at the Treasury Bill yield rate as calculated according to the analogous provisions in 28 U.S.C. S 1961. Performing the

_____

2. The court had previously concluded that had Appellants been forced to sue for recovery of their past-due benefits, the statute of limitations would have barred them from recovering benefits due more than six years prior to the filing of their suit.

necessary calculations, the District Court then awarded Appellants interest at the rate of 5.01%. See id. at 575-78.

Appellants argue that they are entitled to recover the much higher rate of interest that the Plan actually earned while their benefits were withheld, approximately 12%, and allege several flaws in the District Court's analysis. First, they argue that the District Court erred by concluding that requiring the Plan to disgorge all profits earned by delaying payment of their benefits would be "punitive in nature." See Appellants' App. at 26. "As a matter of logic," they argue, "when a defendant is stripped of a benefit it had no right to retain, it is not being `punished.' " Id. Although we can find flaws in Appellants' own analysis, we ultimately conclude that whether disgorgement is deemed punitive or otherwise, the District Court did not abuse its discretion by declining to adopt it as a remedy in this case.

As an initial matter, we note that any return the Plan realized in excess of the risk-free yield on Treasury Bills during the relevant period would be the result of the Plan's investment expertise and labor, as well as additional risk that the Plan, not Appellants, bore. Had the Plan's investments yielded a lower rate of return than Treasury Bills, or even a loss, it would have been the Plan rather than Appellants that would have been required to bear the resulting loss.

Indeed, as Appellants concede, in such circumstances they would have sought, and likely would have recovered, interest based on the Treasury Bill yield or some other "minimal standard rate." Appellant's Br. at 29 n.2. Consequently, requiring the Plan to disgorge profits earned as a result of risks irreversibly borne and labor otherwise uncompensated could be viewed as punitive. Alternatively, awarding interest at a rate higher than the statutory rate might be viewed as punitive merely because it would be higher than necessary to compensate Appellants. See Ford v. Uniroyal Pension Plan, 154 F.3d 613, 619 (6th Cir. 1998) (concluding that awarding interest at a rate that would overcompensate the plaintiff would be punitive and would contravene "ERISA's remedial goal of simply placing the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing.").

11

In any event, what matters is not how the District Court characterized disgorgement, but whether its balancing of the equities amounted to an abuse of discretion. Wefind no such abuse in the District Court's conclusion that the Plan had acted in good faith, and that Appellants would be fully compensated by interest paid at the statutory post-judgment rate.

Appellants next argue that deeming disgorgement of profits as punitive defies the law as well as logic. The District Court's approach, they argue, contravenes Fotta's "paramount goal" of deterring ERISA violations by denying wrongdoers the profits of their misconduct. See Appellant's Br. at 26. Again, however, the argument misconstrues our decision in Fotta. Deterrence was not the paramount goal in Fotta, but only one of the decision's two primary goals--providing restitution and preventing unjust enrichment "at beneficiaries' expense." Fotta, 165 F.3d at 214 (emphasis added). Interest earned in excess of what Appellants themselves would have earned is not earned at their expense.

Appellants next argue that the District Court "impermissibly imposed a requirement of " culpability on the Defendants' part not found in Fotta. See Appellants' Br. at 27. But the mere fact that Fotta did not impose a requirement of culpability does not mean that the District Court, in its discretionary application of equitable principles, could not do so.

In their final argument on this issue, Appellants contend that although this court "has not yet ruled on the appropriate measure of prejudgment interest under ERISA," it "has made clear that selection of an appropriate rate of prejudgment interest must be made in light of the goals of the statute involved." Id. at 31. They then argue, implicitly rather than expressly, that only disgorgement can effectuate ERISA's goals.

As an initial matter, the cases cited by Appellants in support of this argument did not hold that a statutorily-established rate of interest was per se inadequate, as Appellants imply. Rather they merely upheld the relevant decision maker's discretion to award interest at a higher

12

rate according to equitable principles. See Peterson v. Crown Financial Corp., 661 F.2d 287, 292-93 (3d Cir. 1981) (holding that where a "claim sounds in restitution, it calls for the exercise of the court's broader equitable powers," leaving the trial judge with the discretion to award interest above the statutory rate); North Cambria Fuel Co., Inc. v. NLRB, 645 F.2d 177, 181 (3d Cir. 1981), cert. denied, 454 U.S. 1123 (1981) (holding that the NLRB's "broad discretion in fashioning remedies . . . extends to the imposition of an interest rate.").

Additionally, ERISA's goals do not mandate total disgorgement. As we recently noted, "ERISA does no more than protect the benefits which are due to an employee under a plan." Bennett v. Conrail Matched Savings Plan, 168 F.3d 671, 677 (3d Cir. 1999). As the United States Court of Appeals for the Sixth Circuit has recognized, the purpose of granting equitable relief under ERISA is simply to place "the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing." Ford, 154 F.3d at 619.

Awarding Appellants in this case interest at a higher rate then they would have earned had they invested their benefits on their own behalf would go beyond making them whole. Therefore, ERISA's goals can be achieved by awarding interest below the rate actually earned by the Plan. Thus, Appellants' own argument on this point weighs in favor of affirming the District Court's decision to award interest at the statutory rate. Accordingly, we will affirm.

B. Laches

Though the District Court awarded Appellants interest on their delayed pension benefits, it also ruled that the doctrine of laches limited the period for which interest could be recovered. According to the court, "under Pennsylvania law, in the absence of fraud or concealment, laches generally follows the statute of limitations." Mem. & Order of 02/04/1999 at 5 (J.A. at 528) (citing United National Ins. Co. v. J.H. France Refractories Co. , 668 A.2d 120 (Pa. 1995)). Concluding that there was no fraud or concealment in this case, the District Court determined

13

that Pennsylvania's general six-year statute of limitations was the most appropriate limitations period, and restricted the period for which Appellants could recover interest accordingly. See id. at 7. On appeal, Appellants do not challenge the District Court's findings regarding the absence of fraud or concealment. Rather, they argue that the District Court misinterpreted United National Ins. Co., and erred in its application of the laches doctrine. We agree.

As an equitable doctrine, the decision to apply laches is left to the sound discretion of the District Court. See Gruca v. U.S. Steel Corp., 495 F.2d 1252, 1258 (3d Cir. 1974). Consequently, appellate review of a lower court's application of the doctrine is limited to a review for abuse of discretion. See id. Nevertheless, in the exercise of its discretion, the District Court must correctly apply the governing law. In this case, the District Court did not make the necessary findings and we must remand.

In United National Ins. Co., the Pennsylvania Supreme Court did, as the District Court correctly noted, iterate that " `[i]n the absence of fraud or concealment, it is that general rule that laches follows the statute of limitations.' " 668 A.2d at 124 (quoting Silver v. Korr, 139 A.2d 552, 555 (Pa. 1958)), and (citing Philadelphia v. Louis Lab., Inc., 189 A.2d 891, 893 (1963)). But the court's opinion did not discuss, much less define, the doctrine of laches itself.

Under Pennsylvania law, the doctrine of laches has two elements: (1) inexcusable delay; and (2) prejudice. See, e.g., Jacobs v. Halloran, 710 A.2d 1098, 1102 (Pa. 1998) ("Laches arises when a defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him.") (emphasis in the original); DiLucia v. Clemens, 541 A.2d 765 (Pa. Super 1988) ("In order to prevail on his assertion of the equitable defense of laches, [the defendant] must establish both undue delay from [the plaintiff 's] failure to exercise due diligence and prejudice resulting from the delay."). See also Burke v. Gateway, 441 F.2d 946, 949 (3d Cir. 1971) (noting that before a district court can apply the doctrine of laches, it mustfind

14

"inexcusable delay in light of the equities of the case and prejudice to the defendant."). The District Court applied the doctrine of laches, but did not determine that its two required elements were satisfied. Accordingly, we will reverse the District Court on the issue of laches, and remand for a proper application of the doctrine.

C. Class Certification

After the District Court denied Appellants' initial motion for class certification without prejudice, the parties undertook discovery on the issue of whether class certification would be proper. Thereafter, Appellants renewed their motion, seeking certification of the following two classes of plaintiffs:

> Class One [Offset Claims]:

> All persons who retired on or after July 31, 1977 and their beneficiaries who are or were entitled to pension benefits under the Pension Plan of Bethlehem Steel Corporation and Subsidiary Companies but whose benefits were denied or reduced due to their receipt of benefits from another pension plan or fund that were attributable to employment with a former employer that was not an "Employing Company" within the meaning of the Plan.

> Class Two [Interest Claims]:

> All persons, including beneficiaries, who are or were entitled to pension benefits under the Pension Plan of Bethlehem Steel Corporation and Subsidiary Companies whose benefits were delayed, reduced or denied by the Plan for more than 90 days and who have received or will receive a retroactive payment by the Plan of such withheld pension benefits.

Mem. & Order of 06/30/99 at 4 (J.A. at 604) (citing Pls.' Renewed Motion at 1).

In a 29-page Memorandum and Order, the District Court denied certification of both proposed classes,finding them deficient in several respects. On appeal, Appellants argue that the District Court's certification analysis contains

15

numerous errors. They also claim that the "principle basis for denying class certification was the fact that after the renewed class motion was filed, but before the class ruling, the court elected to grant final relief to the two named Appellants and their claims were no longer actively pending." Appellants' Br. at 39-40 (citing Mem. & Order of 06/30/1999 at 8-10 (J.A. at 608-10)). That claim grossly mischaracterizes the District Court's decision.

1. Requirements for Class Actions

Under the Federal Rules of Civil Procedure, a civil suit may proceed as a class action only if it satisfies four prerequisites. Accordingly,

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to t he class;
>
> (3) the claims or defenses of the representative p arties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and ade quately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to the requirements expressly enumerated in Rule 23, class actions are also subject to more generally applicable rules such as those governing standing and mootness. For instance, a plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class. See Davis v. Thornburgh, 903 F.2d 212, 222 (3d Cir. 1990). Additionally, even a plaintiff with standing is generally disqualified from representing a class if his individual claim becomes moot before the proposed class is certified. See Rosetti v. Shalala, 12 F.3d 1216, 1225 (3d Cir. 1993); Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992) (citations omitted). Not

16

surprisingly, however, there are exceptions to this general rule. One such exception is at issue in this case.

So long as a class representative has a live claim at the time he moves for class certification, neither a pending motion nor a certified class action need be dismissed if his individual claim subsequently becomes moot. See id. at 1228. If, on the other hand, the putative class representative's individual claim becomes moot before he moves for class certification, then any subsequent motion must be denied and the entire action dismissed. See Lusardi, 975 F.2d at 978.

2. Standard of Review

We review a decision to certify, or to deny certification of, a class action for abuse of discretion. See In re Prudential Ins. Co. Am. Sales Litig., 148 F.3d 283, 299 (3d Cir. 1998) (citing In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 782 (3d Cir. 1995)); Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992). We may find an abuse of discretion"where the `district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.' " Id. (quoting In re General Motors Corp., 55 F.3d. at 783) (additional quotation marks and citations omitted).

3. Class One (Offset Claims)

The District Court identified multiple, alternative grounds for denying certification of the Class One "offset" claims. First, it concluded that the proposed class had been defined too broadly to permit certification. Stated differently, the District Court concluded that Appellants sought to assert claims on behalf of the proposed class that they had not, and could not, assert on their own behalf. Consequently, they were not qualified to represent the proposed class. Second, the court concluded that even if the proposed class were properly defined, it failed to satisfy three of Rule 23(a)'s four prerequisites for certification. Appellants raise separate challenges to each of these conclusions.

17

The District Court based its conclusion that proposed Class One was overbroad on several factors. First, the court noted that after it had dismissed Plaintiff Holmes' "continuing-offset claim" without prejudice, he had

reasserted that claim in a separate lawsuit. Consequently, there was no live continuing-offset claim pending before the court for which a class could be certified. See Mem. & Order of 06/30/99 at 8 (J.A. 608). The court then noted that both Appellants had settled their "mistaken-offset claims" through administrative means before filing their complaint seeking interest on those claims. Consequently, they lacked live claims at the time they filed their motion for class certification, requiring that it be denied. See id. at 8-10.

On appeal, Appellants argue that under the law of this Circuit, the fact that their mistaken-offset claims had become moot did not disqualify them from representing the proposed class, and thus did not mandate denial of certification. Again, they miscomprehend the relevant law. The status of their own claims would be irrelevant only if those claims were live at the time they moved for class certification. Their claims, however, were moot before they even filed their complaint. Consequently, they are disqualified from representing the proposed class and the District Court did not err by denying certification. See Lusardi v. Xerox Corp., 975 F.2d 964, 978 (3d Cir. 1992).

In addition to concluding that Appellants lacked the live claims required for class certification, the District Court also concluded that certification of proposed Class One should be denied on several alternative grounds. For instance, the court concluded that the proposed class was "so highly diverse and so difficult to identify that [it] is not adequately defined or ascertainable." Mem. & Order of 06/30/1999 at 12 (J.A. 612) (listing six areas that would require detailed inquiry). In addition, the court concluded that even if the proposed class had been properly defined, it did not satisfy Rule 23(a)'s commonality, typicality, and adequacy-of-representation requirements. See id. at 17-19, 23, 25; see also Fed. R. Civ. P. 23(a)(2)-(4).

On appeal, Appellants raise separate challenges to each of these alternative bases for denying certification. Here we

18

need not decide whether the District Court erred, because the fact that Appellants lacked live claims at the time they moved for certification bars certification of proposed Class One in any event. Consequently, there is no need to consider the validity of Appellants' additional challenges, and denial of certification of Class One will be affirmed.

4. Class Two (Interest Claims)

As it did with respect to proposed Class One, the District Court identified several alternative grounds for denying certification of proposed Class Two. First, the District Court concluded that Class Two was defined too broadly"because it includes every plan participant, past or future, who has received or will be receiving a delayed payment of benefits." Mem. & Order of 06/30/1999 at 13 (J.A. 613) (citation omitted). The court had "particular misgivings with respect to the `future' members of the class because of the infeasibility of auditing the Plan in order to determine whether each participant may or may not have some present or future claim regarding delayed benefits." Id. (citation omitted). The court further concluded that the proposed class was "ill-defined" because it included individuals who had received or may one day receive delayed benefits for any reason. In contrast, Appellants' claims focused on "incorrect offsets since the Plan's amendment in 1977." Id. at 13-14.

Appellants argue that the District Court incorrectly concluded that proposed Class Two was overbroad. See Appellants' Br. at 43-45. They do not, however, expressly claim that the conclusion was "clearly erroneous" as required for reversal on appeal. Nor, in fact, are the District Court's conclusions clearly erroneous.

Appellants first argue that "[a]lthough the court believed that determining interest for the members of Class Two would require individualized determinations, this is not correct." Id. at 44 (internal citation omitted). Yet Appellants fail to explain why such a belief is incorrect. Based on their subsequent arguments, Appellants appear to believe that the interest entitlement of every class member can be calculated using a single, objective formula, and that the

19

parties, not the court, would be responsible for performing the requisite calculations. See id. Such a belief ignores Fotta's clear holding that interest on delayed ERISA benefits is an equitable remedy dependent upon the individual facts of each claim. Thus, there is no single, objective formula for calculating each class member's interest entitlement. Moreover, it is the province of the court, not the parties, to balance the equities in each claim. Therefore, the District Court's conclusion that individualized determinations would be required is not clearly erroneous.

Appellants next argue that even if individualized determinations are required, that fact alone is not a "legally valid ground to deny class certification." Id. at 44. But the cases on which Appellants rely do not support their argument. For instance, in Bogosian v. Gulf Oil Corp., we held that:

> it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate. E.g., Philadelphia Electric Co. v. Anaconda American Brass, Co., 43 F.R.D. 452, 457 (E.D. Pa. 196 8); Dolgow v. Anderson, 43 F.R.D. 472, 490-91 (E.D.N.Y. 1968 ). If for any reason the district court were to conclude that there would be problems involved in proving damages which would outweigh the advantages of class certification, it should give appropriate consideration to certification of a class limited to the determination of liability. See Rule 23(c)(4)(A).

561 F.2d 434, 456 (3d Cir. 1977) (emphasis added). As already noted, the issue of liability itself requires an individualized inquiry into the equities of each claim. Thus, the District Court did not err by concluding that proposed Class Two was overly broad and we will affirm denial of certification.

D. Work-Product Immunity

Before seeking relief in the District Court, Appellant Holmes pursued his interest claim through administrative channels. His original claim to interest prompted a Plan

attorney to prepare a legal memorandum analyzing the merits of the claim. Once judicial action had been initiated, Appellants moved to compel production of that memorandum during discovery. A Magistrate Judge denied the motion, concluding that the memorandum was protected from discovery by the doctrine of work-product immunity. See Mem. of 01/08/1999 at 5-6 (J.A. at 514-15). Appellants then appealed to the District Court, which affirmed. In the final issue raised in their appeal, Appellants argue that the Magistrate Judge erred by denying their production request, and that the District Court erred by affirming the Magistrate Judge's order.

We review discovery orders for abuse of discretion. See Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1032 (3d Cir. 1997) (citing Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987); Marroquin-Manriquez v. INS, 699 F.2d 129, 134 (3d Cir. 1983)). We agree that the Magistrate Judge erred, and that the District Court thus erred by affirming denial of Appellants' motion to compel discovery.

The doctrine of work-product immunity " `shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.' " In re Grand Jury (Impounded), 138 F.3d 978, 981 (3d Cir. 1998) (quoting United States v. Nobles , 422 U.S. 225, 238 (1975)). A party claiming work-product immunity bears the burden of showing that the materials in question "were prepared in `the course of preparation for possible litigation.' " Haines v. Liggett Group, Inc., 975 F.2d 81, 94 (quoting Hickman v. Taylor, 329 U.S. 495, 505 (1947); Conoco, Inc. v. United States Dept. of Justice, 687 F.2d 724, 730 (3d Cir. 1982). Work product prepared in the ordinary course of business is not immune from discovery. If the party asserting the privilege bears its burden of proof, the party seeking production may obtain discovery "only upon a showing that the party. . . has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. 26(b)(3).

21

In concluding that the memorandum at issue in this case was protected by work-product immunity, the Magistrate Judge noted that the Plan's attorney had prepared it shortly after Plaintiff Holmes' attorney placed a telephone call to a subordinate of the Plan's administrator. In that telephone conversation, Holmes' attorney claimed that Holmes was entitled to interest on his delayed benefits and further asserted that failure to pay interest violated ERISA. See Mem. of 01/08/1999 at 2 (J.A. 511). Thereafter, the Plan's attorney prepared a memorandum analyzing the merits of Holmes' interest claim.

Based on this factual background, the Magistrate Judge concluded that "it is apparent the [memorandum] was prepared in anticipation of possible future litigation. In addition, it is reasonable to conclude that the document would not have been prepared but for the prospect of litigation." Id. at 6. The District Court determined that the Magistrate Judge's reasoning was "not clearly erroneous or contrary to law," and entered an order affirming denial of Appellants' request for production. See Dist. Ct. Order of 02/03/1999 at 1-2 n.1 (J.A. 522-23).

The Magistrate Judge's conclusions may be reasonable, but they are based on nothing more than assumptions. There is nothing in the record indicating that the Defendants have carried their burden of showing that the memorandum was, in fact, prepared in anticipation of possible litigation. Indeed, the Defendants appear to have claimed nothing more than that "the memorandum was written in connection with the claim by Plaintiff Holmes . . . and . . . is, therefore, privileged and immune from discovery under . . . the work product doctrine." Def.s' Answers to Pl.s' Second Set of Interrogs. at 14 (J.A. 517). The mere fact that the memorandum was prepared "in connection with" Plaintiff Holmes' administrative claim to interest on his delayed benefits hardly establishes that it was prepared in anticipation of litigation. The Magistrate Judge abused his discretion in assuming otherwise. Therefore, we will reverse the order denying Appellants' request for production.

E. The Cross Appeal

Raising a single issue in their cross appeal, the Cross-Appellants (defendants below) suggest that our decision in Fotta is:

22

unclear to the extent it does not address situations in which a participant brings a claim for interest, but the plan at issue expressly disallows such payment, or the plan administrator, who has discretionary authority, has construed the plan to mean that such payment is not allowed.

Cross-Appellants' Br. at 37. They therefore invite us to modify Fotta "to hold that under appropriate circumstances, plan provisions will be given effect and deference paid to plan administrators' decisions to deny interest on delayed benefits and overpayments." Id. at 37–38.

We decline the invitation for three reasons. First, the Cross-Appellees did not raise this issue below, and have thus waived it on appeal. See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1115 (3d Cir. 1993). Second, the Bethlehem Steel Plan at issue does not contain a provision preventing the payment of interest on delayed benefits. Consequently, the Cross-Appellees' arguments on this point are entirely hypothetical, lacking the concrete, particularized facts necessary to support a sound judicial decision. Third, only an en banc court can overturn Fotta's holding that interest on delayed payment of plan benefits is an implied term of the plan contract. See Fotta, 165 F.3d at 213–14; see also United States Court of Appeals for the Third Circuit, Internal Operating Procedure 9.1 (Policy of Avoiding Intra-circuit Conflict of Precedent). Therefore, we decline to entertain the arguments presented in the cross appeal.

III. Conclusion

The District Court correctly concluded that interest awards on delayed employment benefits are an equitable remedy left to its discretion. The court did not abuse that discretion by awarding Appellants interest at the post-judgment statutory rate, and we affirm the award. Nor did the District Court abuse its discretion in refusing to certify the two classes of plaintiffs proposed in Appellants' complaint and subsequent motion for certification. Accordingly, we also affirm the District Court's denial of class certification.

23

The District Court did err in two respects, however. First, the court erred by applying the doctrine of laches without first determining that its two required elements were satisfied. Consequently, we reverse on this issue and remand the case for further findings of fact. Additionally, the court erred by concluding that the legal memorandum Appellants sought to discover was entitled to work-product immunity. The memorandum may well be entitled to immunity, but, on this record, the Defendants have not carried their burden of showing that it is. Therefore, we reverse the District Court's ruling on work-product immunity and remand for further findings.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

24