Michael LA FATA, et al., Plaintiffs,

v.

RAYTHEON COMPANY,
et al., Defendants.

No. 01–CV–1220.

United States District Court,
E.D. Pennsylvania.

March 21, 2002.

Robert S. Kitchenoff, David H. Weinstein, Paul J. Scarlato, Weinstein, Kitchenoff Scarlato & Goldman, Ltd., Bryan R. Lentz, Bochetto & Lentz, Edward F. Kalman, Philadelphia, PA, for plaintiffs.

Steven K. Ludwig, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, Richard J. Antonelli, Littler Mendelson, Pittsburgh, PA, James M. Wilson, Littler Mendelson, P.C., Philadelphia, PA, Gregory C. Braden, H. Douglas Hinson, Michael G. Monnolly, Alston & Bird LLP, Atlanta, GA, for defendants.

## EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff Michael La Fata brought this class action, alleging violations of both federal and state law by defendants in connection with the sale of Raytheon Engineers and Constructors, Inc. ("RE & C") by Raytheon, Inc. ("Raytheon") to Washington Group International, Inc. ("Washington Group"). On July 9, 2001, La Fata filed a Motion for Class Certification, seeking to certify both a Class and a Subclass.

This putative class action challenges the propriety of certain actions taken by RE & C, Raytheon, Washington Group, and several executives and directors, in connection with the RE & C Severance Pay Plan [1] and the Raytheon Stock Option Plan ("Stock Option Plan"). Plaintiff Michael La Fata, a former employee of RE & C, has sued Raytheon, Raytheon Engineers and Constructors International, Inc. ("RECI"), RE & C, Raytheon Engineers and Constructors, Inc. Severance Pay Plan ("Severance Plan Defendant"), United Engineers and Constructors, Inc., Raytheon Company 1995 Stock Option Plan,

---

1. In the pleadings, this plan is referred to as both the "Severance Pay Plan" and the "Termination of Employment Policy." In this opinion, I shall refer to it as the Severance Plan.

John R. Galvin, Barbara M. Barrett, Ferdinand Colloredo–Mansfeld, Alfred M. Zeien, Daniel P. Burnham, Shay D. Assad, and Washington Group. Plaintiff has brought claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the Securities Exchange Act of 1934, and state common law.

Plaintiff seeks to certify a class consisting of "[a]ll former employees of RE & C who were involuntarily terminated on or about July 7, 2000 as a result of the sale of RE & C to Washington Group and were entitled to a Final Payment (i.e., accrued severance pay and vacation pay) which was wrongfully withheld and/or denied to them." Motion for Class Certification ¶ 2. In this opinion, I shall refer to this putative class as the "Severance Class." La Fata also seeks to certify a subclass consisting of "all RE & C employees who received a grant of Raytheon Stock Options after Raytheon's decision to sell RE & C, which Stock Options would not vest until a time subsequent to July 7, 2000, and which unvested Stock Options expired at the time of the sale of RE & C to Washington Group." Motion for Class Certification ¶ 3. As this putative subclass is not truly a subclass within the meaning of Rule 23(c)(4)(B), I shall refer to it as the "Stock Option Class" in this opinion. Plaintiff seeks to certify both the Severance Class and the Stock Option Class pursuant to Rule 23(a) and (b)(3).

## Factual Background

According to the amended complaint, defendant RE & C provided several programs for the benefit of its employees. Among these programs was the Severance Plan, an employee welfare benefit plan that provided for certain payments in the event that an employee was terminated. Specifically, the Severance Plan guaranteed that, in the event of an involuntary termination,[2] full-time RE & C employees were entitled to be paid both severance pay and pay for any unused, accrued vacation time. The payment of these benefits is defined as the "Final Payment" in the Severance Plan.

Another benefit enjoyed by plaintiff and certain other RE & C employees was participation in the Stock Option Plan. This plan provided compensation in the form of stock options to key employees of Raytheon and its Related Corporations. The stock options were granted pursuant to a vesting schedule, where one third of the stock options granted to an employee vested on the first anniversary of the grant, another third vested on the second anniversary, and the final third vested on the third anniversary. The Stock Option Plan also contained a provision whereby any unvested stock options automatically expired if an employee ceased to be an active employee for any reason other than death or retirement.

La Fata alleges that, as early as September 1999, executives and directors of Raytheon and RE & C attempted to sell RE & C. Washington Group performed some due diligence on RE & C in September 1999, though this fact was concealed from most RE & C employees. La Fata also claims that, in order to ensure that RE & C remained attractive to potential purchasers, the defendants granted stock options under the Stock Option Plan to key RE & C employees to prevent them from leaving the company prior to the sale. While doing so, however, defendants failed to inform the recipients that they had decided to sell RE & C and that therefore, the stock options would expire without vesting. La Fata alleges that the defendants also actively misrepresented the status of RE & C to these employees by informing them in two letters and through comments by Shay Assad, CEO of RE & C, at a general meeting, that the company was not going to be sold.

In mid-April of 2000, Raytheon and Washington Group signed an agreement for the sale of RE & C. The sale closed on July 7, 2000 and is alleged to have had two major consequences. First, La Fata claims that this sale effected an involuntary termination of all RE & C employees, entitling them to a Final Payment pursuant to the Severance Plan. Second, as the RE & C employees

---

**2.** Defined in the Severance Plan as any involuntary termination "other than a 'Discharge' for '[p]erformance of behavioral offenses so serious as to render warning futile . . .' " Amended Complaint at ¶ 4.

ceased to work for Raytheon or a Related Corporation on that day, the unvested stock options granted to the key employees under the Stock Option Plan expired.

La Fata filed the complaint in this class action on March 14, 2001, bringing claims pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* and Pennsylvania common law. He filed an amended complaint on April 11, 2001, adding allegations that defendants violated several provisions of the federal securities laws. *See* First Amended Complaint, at 45–47. On July 9, 2001, La Fata filed a Motion for Class Certification, seeking to certify both the Severance Class and the Stock Option Class. On February 25, 2002, I granted defendants' Partial Motion to Dismiss four ERISA claims brought on behalf of the Stock Option Class.

### Class Certification

To obtain certification, a class must satisfy the requirements of Federal Rule of Civil Procedure 23. Rule 23(a) sets forth four prerequisites to class certification:

(1) the class is so numerous that joinder is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

If these four prerequisites, commonly referred to as numerosity, commonality, typicality, and adequacy of representation, are satisfied, plaintiffs must also show that the action is maintainable under one of the three provisions of Federal Rule of Civil Procedure 23(b). In this case, plaintiffs move for class certification on behalf of both classes under

Rule 23(b)(3), which provides for certification when:

the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[3]

Fed.R.Civ.P. 23(b)(3).

▪ A court's consideration of whether class certification is appropriate under Rule 23 is not intended to be an inquiry into the merits of plaintiffs' claims. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 166–67 (3d Cir.2001)(discussing Supreme Court cases). Where plaintiffs' claims involve complex questions of fact and law, however, it may be necessary for a court to " 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.' " *Id.* at 167 (quoting 5 *Moore's Federal Practice* § 23.61[5] ).

### Rule 23(a) Requirements

▪ Rule 23(a)(1) requires plaintiff to demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). This numerosity prerequisite does not require plaintiff to allege a certain number of class members, but only that the class be "so numerous that joinder of all members is impracticable." Fed. R.Civ.P. 23(a)(1). As the Third Circuit recently held, a class consisting of more than forty people generally satisfies the numerosity prerequisite. *See Stewart v. Abraham,* 275 F.3d 220, 227–28 (3d Cir.2001) ("Generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met"); *see also Eisenberg v. Gagnon,* 766 F.2d 770, 785–86 (3d Cir.1985)(allegation of 91 class members satisfies numerosity).

---

**3.** Fed.R.Civ.P 23(b)(3) also lists four factors to be considered in relation to the determination of whether the predominance and superiority requirements are satisfied:

The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and

nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

■ The commonality requirement of Rule 23(a)(2) demands the presence of questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2). Essentially, commonality "provides the necessary glue among class members to make adjudicating the case as a class worthwhile." *Newton,* 259 F.3d at 182 (*quoting* Herbert E. Newberg & Alba Conte, 1 *Newberg on Class Actions,* § 3.01, p. 3–4 (3d ed.1992)). The threshold for satisfying the commonality as well as the typicality prerequisites of Rule 23(a) is not high. *See Newton,* 259 F.3d at 183 ("We have set a low threshold for satisfying [the commonality and typicality] requirements"). The Third Circuit has held that the commonality requirement is not stringent, and that a single common issue of law or fact suffices. *See Johnston v. HBO Film Management, Inc.,* 265 F.3d 178, 184 (3d Cir.2001); *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994).

■ The third prerequisite of Rule 23(a) is that the claims of the class representatives be "typical" of the claims of the remaining class members. Typicality is not identicality. *See Johnston,* 265 F.3d at 184. The purpose of the typicality requirement is to ensure that the interests of the class representatives are aligned with those of the class as a whole. *See In re Prudential Ins. Co. of America Sales Practices Litig.,* 148 F.3d 283, 311 (3d Cir.1998). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Newton,* 259 F.3d at 184 (*quoting* 1 *Newberg on Class Actions* § 3.15, p. 3–78). *See also Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 631 (3d Cir.1996)(typicality is a bar to class certification "where the legal theories of the named representatives potentially conflict with those of the absentees"); *Baby Neal,* 43 F.3d at 58.

■ Under Rule 23(a)(4), La Fata must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This prerequisite requires a court to assess whether any conflicts of interest exist that would prevent both the named plaintiff and his attorneys from representing the class adequately. *See Johnston,* 265 F.3d at 185.

**Rule 23(b)(3) Requirements**

In addition to satisfying the conditions of Rule 23(a), a plaintiff must demonstrate that the putative class meets the criteria of one of the three subsections of Rule 23(b). In this case, La Fata alleges that both the Severance Class and the Stock Option Class should be certified under subsection (b)(3). In order to certify a class under subsection (b)(3), a plaintiff must demonstrate both that common questions of law and fact predominate over individual questions and that a class action is a superior device for resolution of the controversy to other available means.

■ Although the predominance requirement is far more demanding than the commonality prerequisite of Rule 23(a), *see Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), a predominance of common questions does not require unanimity of common questions. Rather, it requires that common questions outweigh individual questions. *See Johnston,* 265 F.3d at 185; *Newton,* 259 F.3d at 187. The purpose of the predominance requirement is to insure that the proposed class is "sufficiently cohesive to warrant certification." *Newton,* 259 F.3d at 187. In evaluating the predominance requirement, the court must sometimes conduct a preliminary inquiry into the merits of the class claims, in order to determine whether they can be properly resolved as a class action. *See id.* at 168. *See also, Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)(stating "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question"). The Third Circuit has instructed that this critical inquiry must begin with an examination of the elements of the underlying cause of action. *See Johnston,* 265 F.3d at 186–87. This is due to the fact that, "[i]f proof of the essential elements of the cause of action requires individual treatment, the class certification is unsuitable." *Id.* at 187 (*quoting Newton,* 259 F.3d at 168).

To be maintainable as a class action, Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods

for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). *See Prudential,* 148 F.3d at 316. The court may consider "the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3)(D). *See Johnston,* 265 F.3d at 194.

### Analysis

Plaintiff has moved to certify two different classes in this lawsuit, a Severance Class bringing ERISA and state law claims relating to the Severance Plan, and a Stock Option Class, bringing claims under §§ 10 and 20(a) of the Securities Exchange Act and state common law. Due to variations between the facts and legal theories asserted by each class and the unique arguments that defendants raise against certification of the Stock Option Class, I will discuss each putative class separately.

### Severance Class

Defendants oppose certification of the Severance Class, claiming that neither La Fata nor his chosen counsel will adequately represent class interests and also arguing that neither of the Rule 23(b)(3) requirements have been established. Even though defendants do not challenge plaintiff's evidence that the numerosity, commonality and typicality requirements of Rule 23(a) are met, I will briefly discuss each to ascertain whether plaintiff has met his burden of establishing that class certification is proper.

*Rule 23(a) Requirements*

La Fata has alleged that the Severance Class will contain approximately eight thousand former RE & C employees. This number is sufficient by itself to satisfy the numerosity requirement of Rule 23(a). This conclusion is reinforced by plaintiff's claim that these employees are scattered throughout forty states and several foreign countries, which would make joinder of these claims impracticable.

With regard to the Severance Class plaintiff seeks to certify, he alleges the several common questions, including:

(1) whether the employment was involuntarily terminated by the sale of RE & C;

(2) whether the employment was terminated by the greatly reduced benefits;

(3) whether the involuntary termination was a "layoff, release or reorganization" under RE & C's Termination of Employment Policy;

(4) whether the Termination of Employment Policy constitutes an ERISA benefit plan;

(5) whether defendants' failure to make the Final Payment violated ERISA and other applicable laws; and

(6) whether the Class members have been damaged or irreparably harmed.

To certify, I need only find one common question of law or fact. *See Johnston,* 265 F.3d at 184. The question of whether the sale of RE & C to Washington Group constituted an involuntary termination is a common question among all of the members of the Severance Class. Defendants do not challenge plaintiff's assertion that the commonality requirement has been met in this case. Therefore, I find that La Fata has demonstrated commonality with regard to the Severance Class.

La Fata must also demonstrate that his claims against the defendants are typical of the Severance Class that he seeks to represent. He brings several claims relating to the Severance Plan, each of which essentially asserts that he was involuntarily terminated from his job with RE & C and was not paid benefits due to him. These claims focus upon the sale of RE & C to Washington Group, the terms of the Severance Plan, and the defendants' failure to pay benefits owing under that Plan. As all of the other Severance Class members were covered under the same Severance Plan and each was allegedly involuntarily terminated by the same actions of the defendants, La Fata's Severance Plan claims are not only typical, but identical to those of the other Severance Class members. Therefore, La Fata has demonstrated that typicality exists for the Severance Class.

La Fata must also demonstrate that both he and his chosen counsel will adequately protect the interests of the class in their litigation of this class action. In his deposition, La Fata affirmed his understanding that his role as lead plaintiff included the

requirement that he look out for class interests rather than his self interest. *La Fata* deposition at 80. He also submitted an extensive exhibit concerning the background and experience of the attorneys he has retained, indicating that they are highly qualified to represent the class in this lawsuit. Defendants raise several spurious arguments against the adequacy of both La Fata and his chosen counsel, but fail to substantiate them with case law. The sole evidence that they identify that is indicative of La Fata's inadequacy as a name plaintiff is a single response he gave during his deposition. In light of his clear recognition of his role as lead plaintiff later in the deposition, however, I find that he is an adequate name plaintiff. I also find that, in light of the exhibit relating to the qualifications and experience of La Fata's chosen attorneys, they are adequate to serve as class counsel in this lawsuit.

*Rule 23(b)(3) Requirements*

La Fata brings several claims on behalf of the Severance Class under ERISA and state law. Specifically, these include claims for benefits under sections 1132 and 1140 of ERISA. La Fata also brings state common law claims for breach of contract, breach of fiduciary duty, unjust enrichment, and breach of good faith and fair dealing.[4] The basic argument that underlies each of these claims is La Fata's allegation that the sale of RE & C to Washington Group constituted an "Involuntary Termination" under the terms of the Severance Plan, which obligated RE & C to pay each member of the Severance Class a "Final Payment" consisting of severance pay and accrued vacation pay.

■ La Fata claims that the common questions of law and fact pertaining to the claims of the Severance Class will not only predominate, but will be identical. The ERISA claims involve questions of federal law and a policy that applied uniformly to all members of the Severance Class. Courts in this Circuit have found that common issues predominate over individual ones in the con-

text of ERISA claims. *See Brooks v. Educators Mut. Life Ins. Co.,* 206 F.R.D. 96 (E.D.Pa.2002); *Gilman v. Independence Blue Cross,* 1997 WL 633568, *6 (E.D.Pa. Oct.6, 1997); *Walsh v. Pittsburgh Press Co.,* 160 F.R.D. 527, 531 (W.D.Pa.1994); *Sutton v. Medical Service Ass'n of Pennsylvania,* 1993 WL 64565, *4 (E.D.Pa. Mar.5, 1993). Defendants' liability to the members of the Severance Class under ERISA will largely depend upon the common question of whether the sale of RE & C constituted an "Involuntary Termination," and the legal consequences of such a termination. Any individual questions concerning the amount of the Final Payment due to each member of the Severance Class will be purely mechanical matters of computation that do not affect the determination of liability. I find that common questions of fact and law predominate over individual questions with regards to the ERISA claims of the Severance Class.

■ For the Severance Class to be properly certified, La Fata must also demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). For the Severance Class, the class action device is a superior method of adjudication because it will: (1) prevent a multiplicity of suits that would waste judicial resources (the same basic issues would have to be relitigated), (2) avoid the risk of inconsistent judgments, and (3) enable plaintiffs with small claims to get into court. *See Georgine,* 83 F.3d at 633 (class action appropriate where plaintiffs' damage claims are small and, thus, plaintiffs do not have a "significant interest in individually controlling the prosecution of separate actions"). Therefore, I find that plaintiff has established that the requirements of Rule 23(a) and (b)(3) with regard to the ERISA claims of the Severance Class and I will certify this class.

**Stock Option Class**

■ La Fata also seeks to certify a Stock Option Class and brings several claims

---

4. The parties do not appear to dispute that the Severance Plan is an ERISA welfare benefit plan. Given the broad scope of ERISA preemption pursuant to 29 U.S.C. § 1144 and the high likelihood that the state law claims relating to the Final Payment will be preempted, I will deny

certification on the state law claims without prejudice to plaintiff filing a renewed motion for certification of these claims if they are not dismissed. Defendants are encouraged to submit a motion to dismiss these claims on preemption grounds.

under the federal securities laws and state common law on behalf of this putative class. Essentially, he claims that defendants issued what they knew to be worthless stock options to members of the Stock Option Class in order to induce them to continue working at RE & C until the sale to Washington Group closed. Specifically, La Fata claims that the defendants violated sections 10 and 20(a) of the Exchange Act and Rule 10b–5,[5] as well as alleging breach of contract; breach of fiduciary duty; unjust enrichment, fraud, fraudulent inducement, and misrepresentation; and breach of good faith and fair dealing. Defendants challenge certification of the Stock Option Class on numerous grounds, including numerosity, typicality and adequacy of counsel. They also argue that neither of the Rule 23(b)(3) requirements have been established with regard to the claims brought by this putative class. As the Rule 23(a) analysis of the federal securities claims and the state law claims is identical, I shall discuss them together. However, treatment of these two sets of claims with regard to predominance and superiority under Rule 23(b)(3) differs greatly, so I shall discuss them separately.

### 1. *Rule 23(a) Requirements*

▮ Defendants challenge plaintiff's computation of the number of members in the Stock Option Class, contending that most of plaintiff's claims relating to the Stock Option Plan are based upon a single misrepresentation at a meeting attended by only fifty-five RE & C employees. This argument mischaracterizes plaintiff's claims, which also allege misrepresentations in the form of two letters sent to all members of the putative subclass, as well as a failure to disclose material information. The Stock Option Class actually contains in excess of 500 members, which is easily sufficient to satisfy the numerosity requirement of Rule 23(a)(1). However, even if defendants were correct, I find that the fifty-five member Stock Option Class is of sufficient size to satisfy the numerosity requirement.

Plaintiff must also demonstrate that there are questions of law and fact common to the proposed class. With regard to the Stock Option Class plaintiff seeks to certify, he alleges several common questions, including:

(1) whether the unvested stock options constituted deferred income benefits under ERISA;

(2) whether the Stock Option Class members were involuntarily terminated by the sale of RE & C;

(3) whether the sale of RE & C was material to the grant of the stock options;

(4) whether the defendants told members of the Stock Option Class that RE & C was not for sale; and

(5) whether the stock options were compensation due and owing to members of the Stock Option Class.

▮ To certify, I need only find one common question of law or fact. The issue of whether the impending sale of RE & C was material to the stock option grants is a common question among the members of the Stock Option Class. Defendants do not challenge plaintiff's assertion that the commonality requirement has been met in this case. Therefore, I find that La Fata has demonstrated commonality with regard to the Stock Option Class.

Defendants challenge plaintiff's assertion that his stock option claims are typical of the Stock Option Class. They claim that La Fata was not present at the meeting where RE & C CEO Shay Assad allegedly misrepresented that RE & C would not be sold and that he only heard about this statement from his immediate superior. Defendants also assert that the members of the Stock Option Class are alleged to have received varying misrepresentations from different sources.

5. Section 20(a) of the Securities Act creates liability for "controlling persons" in a corporation. *See* 15 U.S.C. § 78t(a). To state a cause of action for control person liability, a plaintiff must allege (1) a primary violation by a controlled person or entity; and (2) "circumstances establishing control" of a primary violator. *See In re Campbell Soup Co. Securities Litigation,* 145 F.Supp.2d 574, 599 (D.N.J.2001); *In re ·MobileMedia Sec. Litig.,* 28 F.Supp.2d 901, 940 (D.N.J.1998). Liability under Section 20(a) of the Securities Act depends upon the existence of a violation of another section of the Securities Act. *See Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 279 (3d Cir.1992).

As a result, they argue that La Fata's stock option-related claims cannot be considered typical of the Stock Option Class members who heard these misrepresentations from different sources.

This argument focuses too heavily upon a single misrepresentation out of several that La Fata alleges to have occurred. Indeed, two of the other misrepresentations were letters that were allegedly sent to each member of the Stock Option Class. While there may be some variance in the exact manner in which the Stock Option Class members received the misrepresentations, it is clear that each of them will be proceeding on identical legal grounds. The essential legal argument common to all Stock Option Class members is that defendants gave them stock options while affirmatively concealing the fact of an impending sale of RE & C that would make the options worthless. Where, as here, the claims of the name plaintiff and putative class members "involve the same conduct by the defendant[s], typicality is established regardless of factual differences." *Newton*, 259 F.3d at 183–84. Therefore, I find that La Fata has established typicality with regard to his stock option-related claims.

Defendants' challenge to the adequacy of representation by La Fata and his chosen counsel, discussed in connection with the Severance Class, also applies to the Stock Option Class. For reasons identical to those discussed above, this challenge is without merit. Plaintiff La Fata has demonstrated that both he and his chosen attorneys will adequately represent the interests of the Stock Option Class in this lawsuit.

### 2. *Rule 23(b)(3) Requirements*

Rule 23(b)(3) requires that plaintiff establish that common questions of law and fact predominate over individual questions and that a class action be a superior means of adjudication than other available alternatives. Fed.R.Civ.P. 23(b)(3). The state law claims that La Fata brings on behalf of the Stock Option Class, potentially involving the laws of forty states and seventeen nations, require a vastly different predominance inquiry that the federal securities law claims. Therefore, I shall discuss the predominance and superiority aspects of the federal and state law claims separately.

### A. *Securities Exchange Act Claims*

The Third Circuit has written extensively on the issue of predominance in the context of securities fraud class actions. To establish a private securities fraud claim under the Securities Exchange Act of 1934, "plaintiffs must show that defendants made misstatements or omissions of material fact, with scienter, in connection with the purchase or sale of securities, and that the plaintiffs injuriously relied on the misstatements or omissions." *Johnston*, 265 F.3d at 189.[6] Where proof of the essential elements of such a claim requires individual treatment, class certification may be unsuitable. *See id.; Newton*, 259 F.3d at 171–72.

The Third Circuit has noted that, under Rule 10b–5, a plaintiff must establish that he suffered an economic loss that was caused by the defendants' fraudulent conduct. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 185 (3d Cir.2000). Economic loss is usually an issue of damages, and the necessity of individual calculation of damages does not generally preclude class certification where common issues of liability exist. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir.1977); *Forman v. Data Transfer Inc.*, 164 F.R.D. 400, 404 (E.D.Pa.1995)("the focus of the [predominance] inquiry is directed primarily toward the issue of liability"). However, in the context of 10b–5 securities fraud claims, the Third Circuit has distinguished between two aspects of economic loss: proof of injury (whether or not an injury occurred at all) and calculation of damages (which determines the actual value

---

**6.** Several courts in this district have permitted private securities fraud cases to go forward in situations where an employee was granted stock options pursuant to an employee stock option plan, reasoning that such a conveyance constitutes a "purchase or sale of securities" for purposes of the Securities Exchange Act. *See e.g., Tafuri v. Air Products and Chemicals, Inc.*, 1997 WL 643598 (E.D.Pa. Oct.8, 1997); *Campbell v. National Media Corp.*, 1994 WL 612807 (E.D.Pa. Nov.3, 1994).

of the injury). *See Newton,* 259 F.3d at 188. The *Newton* court instructed that, while calculation of damages does not affect the predominance inquiry, individual questions relating to proof of injury may preclude a finding of predominance. *See id.* In the usual case of a securities violation, the plaintiff's claims "involve a fraudulent material misrepresentation or omission that affects a security's value." *Newton,* 259 F.3d at 173. In such a case, economic injury "naturally flow[s] from defendant's alleged conduct" and proof of injury may be presumed on a class-wide basis. *Id.* at 178. Such a presumption has been found to apply in cases of a fraudulent pricing policy that overcharged investors and fraud-on-the-market cases where the price at which the stock is traded is affected. *See id.* at 179; *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1419 n. 8 (3d Cir.1997). However, there is "no support in the case law for presuming economic injury for purposes of class certification in Rule 10b–5 claims absent indication that each plaintiff has suffered an economic loss." *Newton,* 259 F.3d at 180. Where an individual analysis is required in order to determine whether each class member actually sustained economic injury in relation to a securities fraud claim, "individual questions . . . are overpowering." *Id.* at 189.

■ The facts of this case differ greatly from those in a typical securities fraud action. Unlike a fraud-on-the-market claim, the value of the securities is not at issue. In contrast to an over-pricing policy claim, there were no costs passed on to the entire class of investors. Instead, the Stock Option Class members were granted stock options that expired before vesting due to the sale of RE & C. However, the Stock Option Agreement setting the terms of each option grant explicitly provided for this vesting schedule and expiration. La Fata does not allege any misrepresentation or omission in the terms of this agreement. Instead, he alleges that the Stock Option Class members were induced to remain as employees of RE & C during the period leading up to the sale of the company by the grant of the stock options. Thus, the only injury they can claim from defendants' alleged misrepresentations stems from the decision to remain employed by RE & C during this period. It is far from clear that all, or in fact any, members of the Stock Option Class were induced to remain at RE & C by the grant of the stock options. Any such injury will have necessarily occurred on an individual basis, depending upon the individual motivations and alternative job options of the class members. As proof of this claim will require individual assessments of this essential element, the common issues do not predominate over individual issues.

■ To be maintainable as a class action, Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). With regard to the federal securities law claims of the Stock Option Class, the presence of individual questions of fact compels the conclusion that the class action device would not be a superior method of adjudication for this class. Specifically, these claims asserted on behalf of the Stock Option Class require proof relating to the reasons that each member of that class continued working at RE & C after receiving the stock options. This will inevitably result in an individual inquiry with respect to each member of the Stock Option Class concerning their receipt of the stock options, whether they received other job offers, and whether their possession of the unvested stock options prevented them from pursuing alternative employment. Such mini-trials would present serious and unsurmountable manageability problems.[7]

---

7. Liability under Section 20(a) of the Securities Act depends upon the existence of a violation of another section of the Securities Act. *See Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 279 (3d Cir.1992). Here, the 10b–5 claim is the Securities Act violation upon which liability under Section 20(a) is premised. As this 10b–5 claim does not provide sufficient grounds to certify the Stock Option Class, the interests of efficient case management dictate that certification also be denied with regards to plaintiff's 20(a) claim. *See* Fed.R.Civ.P. 23(b)(3) (court may consider "the difficulties likely to be encountered in the management of a class action" in deciding whether to certify a class under this subsection); *In re Bell Atlantic Corp. Securities Litig.,* 1995 WL 733381, *6 (E.D.Pa. Dec. 11, 1995)(noting that 20(a) claim is dependent upon 10b–5 claim and

## B. *State Law Claims*

La Fata also asserts state law claims for breach of contract; breach of fiduciary duty; unjust enrichment, fraud, fraudulent inducement, and misrepresentation; and breach of good faith and fair dealing. Defendants claim that individual questions predominate with respect to these claims for two reasons: (1) members of the Stock Option Class worked for RE & C in approximately forty states and seventeen countries, whose laws with regard to these claims are likely to differ, and (2) plaintiff will need to demonstrate reliance to make out these claims, which will necessitate individual inquiries.

■ The fact that members of the Stock Option Class worked in approximately forty states and seventeen foreign countries does not necessarily make class certification inappropriate. *See Prudential,* 148 F.3d at 315 ("Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit"). However, in order for the court to certify such a class, the plaintiff must have made "a creditable showing . . . that class certification does not present insuperable obstacles." *In re School Asbestos Litigation,* 789 F.2d 996, 1010 (3d Cir.1986). Such a showing was found to exist where the plaintiffs submitted charts containing state-by-state comparisons of each element of each state law claim, an affidavit by an expert witness opining that differences between state laws were minimal and could be grouped into a few patterns, and model jury instructions for each of these patterns of state law claims. *See In re Prudential Ins. Co. of America Sales Practices Litig.,* 962 F.Supp. 450, 525 (D.N.J.1997).

■ In this case, plaintiff has provided two exhibits relating to the issue of differences among potentially applicable state laws. These exhibits consist of several short paragraphs providing the basic elements of each claim in New Jersey, Pennsylvania, Col-

orado and Massachusetts. Plaintiff asserts that there are no significant differences in the laws of these states with regard to each of the state law claims he brings on behalf of the Stock Option Class. Plaintiff's showing that there are, at most, minimal differences between the laws of the different states is a sufficiently credible demonstration that class certification should not be denied due to the possibility that the laws of several states might apply to the claims of members of the Stock Option Class.

■ After demonstrating that certification is not precluded by numerous potential sources of state law, plaintiff still has the burden of demonstrating that common questions of law and fact predominate over individual ones. In this respect, La Fata's pleadings fail to meet the standard necessary for certification. While he does include some examples of common questions that allegedly exist for the state law claims, several of these "common questions" appear to involve the same inquiry that was fatal to La Fata's federal securities law claims, whether the members of the Stock Option Class were induced to remain at RE & C by the allegedly fraudulent grant of stock options. As presented in the pleadings, these state law claims lack the specificity that permitted a definitive resolution of the federal securities claims. Therefore, I shall deny certification of the Stock Option Class with respect to the state law claims without prejudice to plaintiff refiling a motion to certify along with more comprehensive briefing of these claims.

### ORDER

**AND NOW,** this 21st day of March, 2002, it is **ORDERED** that plaintiff's Motion for Class Certification (Docket Entry # 12) is **GRANTED** in part and **DENIED** in part. I find that the Severance Class, as defined below, meets the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. This action is hereby certified as a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(3), on behalf of the following Severance Class:

certifying both upon concluding that Rule 23(b)(3) requirements were met with regard to

the 10b–5 claim).

All former employees of RE & C who were involuntarily terminated on or about July 7, 2000 as a result of the sale of RE & C to Washington Group and were entitled to a Final Payment (i.e., accrued severance pay and vacation pay) pursuant to ERISA which was wrongfully withheld and/or denied to them.

Excluded from the Severance Class are any RE & C employees who were terminated for cause, any RE & C employees who received a Final Payment, and the former officers and directors of RE & C, their legal representatives, heirs, successors or assigns.

Plaintiff Michael La Fata is hereby designated as the representative of the Severance Class. Weinstein Kitchenoff Scarlato & Goldman Ltd., Bochetto & Lentz, P.C. and Edward F. Kalman are hereby designated as counsel for the Severance Class.

I find that the Stock Option Class, as defined in the memorandum accompanying this order, does not meet the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Therefore, I **DENY** certification of the Stock Option Class.